EDWARD E. MILLER, RESPONDENT, v. JOHN REPP ICE AND · COLD STORAGE COMPANY, INCORPORATED, APPELLANT.

Argued May 31, 1929—Decided February 3, 1930.

For the appellant, *Avis & Avis* and *Clarence L. Cole.*

For the respondent, *George B. Marshall* and *David O. Watkins.*

The opinion of the court was delivered by

BODINE, J. The plaintiff was a grower of peaches. On and after August 26th, 1927, he stored in the defendant's cold storage plant sixteen thousand two hundred twenty-five baskets of Hale and Elberta peaches and received a warehouse receipt in the usual form in compliance with the Uniform Warehouse Receipt law. *Pamph. L.* 1907, *ch.* 133. On September 12th, 1927, the plaintiff received a letter from the defendant bearing date September 9th, of the purport following:

"We have had some trouble in attempting to keep the temperatures down in the storage warehouses, and find that the fruit is not keeping as it should. This appears to be caused by some peculiarity in the fruit itself, as the plant has been operated in its usual manner and to capacity.

"The conditions are such that we deem it necessary to notify you that the peaches of yours now in storage in our

Glassboro warehouse should be removed within seventy-two hours in accordance with the terms of your signed contract.

"We have such a large quantity of peaches on storage that it will be somewhat difficult to remove all within the above period, but if early application for removal is made we will do the best we can in getting them out.

"Your storage bill is herewith enclosed."

After receipt of this communication, plaintiff went to the warehouse and attempted to salvage his property. As he went through the baskets of fruit he realized that the crop was a total loss, and on September 15th, 1927, prepared his claim for damages which was served the next morning.

The jury returned a verdict in favor of the plaintiff for the loss on the fruit, and in favor of the defendant on the counter-claim for storage charges.

The Supreme Court said in *Levine* v. *D. Wolff & Co.,* 78 *N. J. L.* 306, 307:

"The case presents a question resolvable under the law of bailment, and the liability of the defendant thereon is to be determined by the conclusion reached upon the facts as to whether as bailee he performed the duty imposed upon him by law as a warehouseman.

"At common law, since Coggs *v.* Bernard, this duty was defined to be, to take reasonable care of the goods entrusted to his charge. *Story Bailm.* 444; *Insurance Co.* v. *Kiger,* 103 *U. S.* 352.

"Section 21 of chapter 133 of the laws of 1907 entitled 'An act concerning warehouse receipts and to make uniform the law relating thereto,' makes no change in this respect in the common law doctrine, and is merely declaratory thereof. * * *

"It is to be noted also that the reasonable care contracted for was that ordinarily exercised by a warehouseman 'to store' the plaintiff's goods, and it has been held that this duty imposed upon the warehouseman such care and diligence as good and capable warehousemen are accustomed to show under similar circumstances. *Lancaster Mills* v. *Merchants Cotton Press Co.,* 89 *Tenn.* 1."

"Of course a warehouseman is liable for any loss or injury to goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise." *Dantes* v. *McGann*, 98 *N. J. L.* 55.

The testimony indicates that the peaches were in prime condition when they were placed in storage. After they had been in storage about a week, the plaintiff tried to go into the warehouse to examine them. He was unable to do so, and Repp, the manager of the warehouse, told him that he would not permit the men to go into the rooms without wearing gas masks. After receipt of the notice of removal, the plaintiff went to pack his peaches. In the warehouse, he found cakes of melting ice piled up on the floor and lime was thrown about. The brine pipes were dripping and were without frost. The peaches were warm and wilted. The circumstances indicated that the temperature had never been sufficiently reduced to preserve the fruit.

The defendant's cold storage plant is built of brick and reenforced with concrete with insulation on the roof, walls and floor. There are six hundred thousand cubic feet of storage in the building and one hundred thousand feet of pipe. It conforms to the ordinary specifications. The manager was never able to get the temperature down, so he purchased ice and salt and put the ice and salt around in cans. He put in several tons of ice and several tons of salt; still the brine was circulating through the pipes at a temperature of about thirty-eight and the rooms had a temperature not below fifty. The weather was not unusual for the season, and the temperature maintained would not preserve fruit. It appears that during the summer the plant had been closed and shortly before entering into the contract in suit the warehouse had been opened and was scrubbed out with hot water. The brine was turned on August 26th, the day the contract was made, and it normally took forty-eight hours to reduce the temperature in the warehouse. Notwithstanding knowledge of this fact, the peaches were brought in for several days and the warehouse remained open while the men were bringing in the baskets and packing them away. The temperature never went below fifty degrees.

From August 27th to September 12th, the pipes in the warehouse were never covered with ice. They dripped water which fell upon the peaches and on the floor. The place was full of moisture and foul gases. The house was never cold enough to preserve the fruit.

Of the twenty-nine assignments of error, the first argued is the refusal of the trial judge to charge the jury that they could not find negligence based upon the claim of negligence in not maintaining a proper temperature. The contract provided as follows: "Party of the second part shall not be responsible for failure to maintain any given temperature unless same is caused by its negligence." The trial judge charged the jury as follows:

"The defendant was charged, however, with ordinary care for the protection of the fruit, and by ordinary care in this connection is meant the care that a reasonably careful owner would exercise in regard to similar property of his own. This degree of care the defendant was bound to observe. regardless of any condition of the contract which might conflict therewith. The law imposed that obligation, and it could not be impaired by any stipulation of the contract in pursuance of which the peaches were stored. * * *

"Was the failure to maintain a proper temperature due to the negligence of the defendant? The contract for storage explicity provided that the defendant should not be responsible for failure to maintain any given temperature, unless the same should be caused by the negligence of the defendant. This stipulation in the contract is in accord with the rule of law which, independently of the contract, imposed upon the defendant the duty to exercise ordinary care to protect and preserve the property of the plaintiff while in its custody. Did the defendant exercise such a degree of care? Did he use the care that a reasonably careful owner would exercise in regard to his own property of the same or similar nature? That is the test you are to apply to the evidence, that is, as to what the defendant did, or failed to do, in caring for the plaintiff's property, in order to determine this question of negligence."

This was proper under the testimony developed at the trial. The evidence would justify the jury in finding that the failure to maintain a sufficient temperature was due to the carelessness of the defendant. The defendant received the fruit and put it in a warm warehouse not knowing that it could ever reduce the temperature low enough to preserve the fruit and it never did. It was not charged with failure to maintain any given temperature, but in negligently failing to maintain the temperature which a reasonably careful owner would maintain to preserve similar property.

The eighth and ninth requests are to the effect that there was no evidence to justify a finding of negligence based either upon the failure to maintain a proper temperature or upon the fact that the defendant's plant was defective or negligently operated. In view of the fact that the trial judge submitted to the jury the question of liability based upon negligent failure to maintain a proper temperature, we fail to see how his refusal to charge these requests was improper. As previously indicated, the measure of the warehouseman's liability is the failure to exercise such care in regard to the goods entrusted to him as a reasonably careful owner of similar goods would exercise. This liability is imposed by law as well as by the contract of bailment. The trial judge clearly presented the issue to the jury and there was evidence to justify such presentation. Hence, the refusal to charge requests predicated upon another theory of the law was quite proper. The same reasoning applies with equal force to the defendant's fifth and thirteenth requests.

This brings us to the alleged error in the court's charge as follows:

"If you find that the peaches were sound when delivered for storage, you would be justified in finding that that deteriorated condition, or damaged condition when removed, was due to the temperature to which they were subjected while in the defendant's storage plant. Even such a finding, however, would not be dispositive of the case, because that would bring you to the next question: Was the failure to maintain a proper temperature due to the negligence of the

defendant?" This was proper. It is suggested that there was no evidence from which the jury could find that the failure to maintain a temperature suitable for the purpose was due to the defendant's negligence. This overlooks the testimony adduced.

Under the contract of bailment, the plaintiff was obliged to make claim within seventy-two hours of discovery of his damage. The plaintiff was notified on September 12th to remove. He immediately went to the plant and started removing his peaches. It was only on September 15th, 1927, that he realized the extent of his injury. He then immediately made claim in writing for his total loss, the actual amount of damage to be later determined when the extent of salvage could be determined. This seems well within the time stipulated by the parties. Certainly, as each basket was uncovered there is no obligation to make a claim for damages for that particular parcel, but it was only after unpacking and sorting had progressed could the plaintiff determine the nature and extent of his loss, and, of course, it is only after a sale of the salvaged property that the full extent of the injury could be determined.

Error is assigned in not striking the testimony of a commission merchant in Philadelphia, to whom the peaches had been consigned, who testified that they were injured by reason of there not being sufficient refrigeration. He was not a a cold storage expert, but he had handled fruit all his life and was perfectly competent to testify as to what was the matter with the fruit, the subject-matter of the suit. Certainly, such a witness could testify that the fruit had not been kept in a sufficiently cold storage.

The testimony that Hale and Elberta peaches had been kept in cold storage at a plant at Pitman was competent to rebut the testimony offered in behalf of the defendant that such fruit would not keep that season. However, the point is not necessary of decision since there seems to have been no proper exception taken.

There is no merit in the suggestion that the trial judge should have charged the defendant's fifteenth request, which

is as follows: "If plaintiff knew or ought to have known that any peaches he stored in defendant's house were likely to be damaged by reason of defendant's inability to maintain a proper temperature, plaintiff cannot recover." This request and the final argument of counsel for the defendant overlooks the nature of the action. The suit is upon a contract and the measure of the warehouseman's liability is his failure to exercise such care with respect to the plaintiff's property as a reasonably careful owner would exercise as to his own. It certainly can be no defense to an action upon contract where there is proof defendant has failed to perform, that the plaintiff should have known better than to have entered into a contract with such a person.

It seems unnecessary to consider the other points argued or suggested in the brief of counsel for defendant. It is sufficient to say that the issues involved were clearly presented to the jury and the proofs sustain their verdict.

The judgment below will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, JJ. 12.

*For reversal*—None.